1

2

3

4

5
UNITED STATES DISTRICT COURT

6
EASTERN DISTRICT OF WASHINGTON

7
MICHELLE R. DUPREY-BENNETT,
a single person,

8
                              Plaintiff,

9
        v.

10
SPOKANE COUNTY; SPOKANE

11
COUNTY REGIONAL ANIMAL
PROTECTION SERVICE (SCRAPS);

12
SCRAPS DIRECTOR NANCY HILL,
OFFICER R. FAYLOR,

13
                              Defendants.

14

NO:  2:14-CV-0398-TOR

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS

15    BEFORE THE COURT is Defendants' Motion to Dismiss (ECF No. 4).

16  This matter was submitted for consideration without oral argument.  The Court has

17  reviewed the briefing and the record and files herein, and is fully informed.

18  //

19  //

20  //

ORDER GRANTING IN PARTY AND DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS ~ 1

**BACKGROUND**

This is a case involving the impoundment and euthanasia of a dog.  Plaintiff Michelle R. Duprey-Bennett asserts, *inter alia*, claims for procedural due process in violation of 42 U.S.C § 1983, emotional distress, conversion, and negligent misrepresentation.  ECF No. 1-1 at 6-7.  Defendants have jointly filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), seeking to dismiss Plaintiff's Complaint with prejudice.[1]  ECF No. 4.

**FACTS[2]**

On November 11, 2012, Spokane County Regional Animal Protection Service ("SCRAPS") Officer R. Faylor responded to a report of an injured dog.  Officer Faylor located the dog, a German Shepherd, and was provided the address

---

[1] Although Defendants' Motion seeks to dismiss all claims within Plaintiff's Complaint, they have not provided any briefing as to Plaintiff's claims for unlawful interference with her right of possession in her property, ECF No. 1-1 at 6, ¶ 3.5, nor Plaintiff's Section 1983 conspiracy claim, *id.* ¶ 3.9.

[2] The following facts are principally drawn from Plaintiff's Complaint and accepted as true for the instant motion.  In deciding a motion to dismiss under 12(b)(6) or 12(c), courts may consider allegations within or attached to the complaint, matters of judicial notice, and other extrinsic documents incorporated by reference.  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

ORDER GRANTING IN PARTY AND DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS ~ 2

of the dog's owner by the reporting party.  Officer Faylor evaluated the dog for injury and concluded that, although the dog did not appear to be in distress, he was "a bit wobbly."  Officer Faylor proceeded to knock on the door of the residence but received no response.  Officer Faylor also called the phone number, as listed in SCRAPS' records associated with the address, but received no answer.

Officer Faylor left a notice of violation at the residence, indicating that SCRAPS would hold the dog for a period of five days, and impounded the dog at SCRAPS' shelter.  Pursuant to Spokane County Code 5.04.060(1), SCRAPS may impound a dog in violation of any provision of the Code, including if the dog is running "at-large,"[3] *id.* at 5.04.070(1), or found to be sick or injured.  If the dog is licensed, SCRAPS will keep the dog at the shelter for at least 5 days.  *Id.* at 5.04.060(2).  If the dog is unlicensed, SCRAPS provides notice that it will hold the dog for 3 days.  *Id.*  An owner or keeper may then redeem his or her dog upon payment of all redemption fees and, if applicable, upon licensing the dog.  *Id.* at 5.04.060(5).  Plaintiff's Complaint does not allege that her dog was licensed.

---

[3] "At large" is defined under the code as "a dog that is physically off the premises of the owner, handler, or keeper of the dog and which is not secured by a leash that is under the control of the owner, handler, or keeper not exceeding eight feet in length."  Spokane County Code 5.04.020(6).

Two days later, on November 13, 2012, Plaintiff called SCRAPS several times and travelled to the shelter to inquire about her dog. Plaintiff did not redeem her dog at this time.

By November 14, 2012, the dog suffered a broken tail from an altercation with the dog in the next cage and was otherwise in poor condition. SCRAPS telephoned Plaintiff and left a message when there was no answer. SCRAPS brought the dog to a veterinary office for evaluation. According to the "Injured Animal Form," the veterinarian noted the dog had degenerative myelopathy, pressure sores, urine scald, a left swollen leg, and a broken tail. ECF No. 5-3 at 2. The veterinarian further opined that the dog's condition required "extreme care," which would be "extremely difficult in kennel setting." *Id.* As such, the veterinarian recommended euthanasia "ASAP" as the most humane option. *Id.* Without first allowing Plaintiff a meaningful opportunity to respond to SCRAPS' previous telephone message, SCRAPS Director Nancy Hill approved euthanasia of the dog.

Plaintiff returned SCRAPS' call one hour after it had first left her a message and was informed that her dog had been euthanized. Notwithstanding the applicable holding period, "any unlicensed impounded dog [may] be humanely euthanized if the director determines the animal to be . . . suffering from serious injury or disease." Spokane County Code 5.04.060(4). Otherwise, the dog may be

ORDER GRANTING IN PARTY AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS ~ 4

adopted or humanely euthanized if, after expiration of the relevant holding period, the dog has not been redeemed. *Id.* at 5.04.060(3). Notwithstanding the licensing requirement, SCRAPS was on notice that Plaintiff was the owner, as indicated by all previous contact.

Plaintiff filed suit against Defendants on October 17, 2014, in Spokane County Superior Court, which action was removed to this Court on December 11, 2014. ECF Nos. 1, 1-1. In her suit, Plaintiff is suing SCRAPS Directors Nancy Hill and Officer Faylor, as well as Spokane County and SCRAPS under the theory of respondeat superior, for the above events.

## DISCUSSION

### A. Standard of Review

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In reviewing a 12(c) motion, the court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the nonmoving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Marshall Naify Revocable Trust v. United States*, 672 F.3d 620, 623 (9th Cir. 2012) (quoting *Fajardo v. Cnty. of L.A.*, 179 F.3d 698, 699 (9th Cir.1999)).

"Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks and citation omitted).

A Rule 12(b)(6) motion tests the legal sufficiency of the plaintiff's claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To withstand dismissal, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Naked assertion[s]," "labels and conclusions," or "formulaic recitation[s] of the elements of a cause of action will not do." *Id.* at 555, 557. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a plaintiff need not establish a probability of success on the merits, he or she must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

A complaint must also contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at

678 (quoting *Twombly*, 550 U.S. at 555).  In assessing whether Rule 8(a)(2) has been satisfied, a court must first identify the elements of the plaintiff's claim(s) and then determine whether those elements could be proven on the facts pled.  *See id.* at 675.  The court should generally draw all reasonable inferences in the plaintiff's favor, *see Sheppard v. David Evans & Assocs.*, 694 F.3d 1045, 1051 (9th Cir. 2012), but it need not accept "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted). Generally, in ruling upon a motion to dismiss, a court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the party opposing the motion.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

**B. SCRAPS' Capacity to be Sued**

As an initial matter, Defendants move to dismiss SCRAPS as a Defendant, asserting that it is not a legal entity subject to suit.  ECF No. 4 at 5-6.

To determine if a governmental body was intended to be a separate legal entity with the capacity to sue or be sued, courts look to the enactment providing for its establishment. *Foothills Dev. Co. v. Clark Cnty. Bd. of Cnty. Comm'rs*, 46 Wash.App. 369, 376–77 (1986) (citing *Roth v. Drainage Improvement Dist. No. 5*, 64 Wash.2d 586, 588 (1964)).  If the enacting provision did not create a separate legal entity with capacity, then the legal action is more properly brought against

1   the greater entity of which the governmental body is a part.  *See, e.g., Roth*, 64

2   Wash.2d at 588) (holding that the drainage improvement district, organized by

3   Clark County, did not have the capacity to sue or be sued apart from the County).

4   *Nolan v. Snohomish Cnty.*, 59 Wash.App. 876, 883, 802 P.2d 792 (1990) (holding

5   Snohomish County Council is not a legal entity separate and apart from the county

6   itself; thus jurisdiction over the Council was achieved by suing the County itself);

7   *Foothills Dev. Co.*, 46 Wash.App. at 376–77 (holding the Clark County Board of

8   County Commissioners is not a separate entity that has capacity to be sued; rather,

9   the County was the proper defendant); *see also Worthington v. Westnet*, 341 P.3d

10  995, 1002 (2015) (Yu, J., dissenting) (discussing relevant Washington precedent

11  applying *Roth's* enabling-statute analysis).

12       The Revised Code of Washington and Spokane County Code help guide the

13  Court's analysis here.  RCW 36.01.010 expressly provided Washington counties

14  the capacity to sue and be sued: "The several counties in this state shall have

15  capacity as bodies corporate, to sue and be sued in the manner prescribed by law."

16  Specific to animal control, Washington county and city animal control agencies are

17  authorized to "enforce city or county municipal ordinances regulating the care,

18  control, licensing, or treatment of animals within the city or county."  RCW

19  16.52.011(2)(c).  In so enforcing, the county or city may administer the relevant

20  animal control laws itself or "grant exclusive authority to exercise the privileges

ORDER GRANTING IN PARTY AND DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS ~ 8

and authority granted by this section to one or more qualified corporations." *Id.* Rather than contracting away animal enforcement to a corporation, Spokane County's Board of County Commissioners established by resolution the Spokane County Animal Protection Service, also known as SCRAPS, to enforce the relevant provisions of the Code and RCW on behalf of the county.  Spokane County Code 5.04.020(4).  It necessarily follows that SCRAPS is not a separate legal entity, apart from the County, but rather was created by Spokane County for the purpose of enforcing its animal control measures.  Further, no provision in the RCW or County Code contemplates SCRAPS' capacity to sue or be sued, separate from the County.  Accordingly, because SCRAPS is not a legal entity, the County is the proper Defendant in this action and SCRAPS is appropriately dismissed.

### B. Section 1983 Claim

Pursuant to 42 U.S.C. § 1983, Plaintiff alleges that Defendants Nancy Hill and Office Faylor unlawfully deprived Plaintiff of her property without due process.[4]  A cause of action pursuant to section 1983 may be maintained "against

---

[4] Although Plaintiff's Complaint references the Fourth Amendment, which protects individuals against unreasonable searches and seizures, this Court construes her constitutional cause of action as one for procedural due process.  ECF No. 1-1 at 6, ¶ 3.2 ("[Director Nancy Hill and Officer Faylor, while acting under color of state law, violated Plaintiff's right to due process under the Fourteenth and Fourth

ORDER GRANTING IN PARTY AND DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS ~ 9

any person acting under color of law who deprives another 'of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003) (quoting 42 U.S.C. § 1983).  The rights guaranteed by section 1983 are "liberally and beneficently construed."  *Dennis v. Higgins*, 498 U.S. 439, 443 (1991) (quoting *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 684 (1978)).

## 1. Personal-Capacity Suits

Section 1983 suits can be brought against state officials either in their official or personal capacity.  Official-capacity suits are properly treated as suits against the state as they represent another way of pleading an action against an entity of which an officer is a part.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Larez v. City of L.A.*, 946 F.2d 630, 646 (9th Cir. 1991).  "Indeed, when officials sued in this capacity in federal court die or leave office, their successors automatically assume their roles in the litigation."  *Hafer*, 502 U.S. at 25 (citing Fed. R. Civ. P. 25(d)(1)).  The relevant analysis, then, in an official-capacity suit is whether the entity's "policy or custom" played a part in the violation.  *Kentucky v. Graham*, 473 U.S.159, 166 (1985) (quoting *Monell v. City of N.Y. Dep't of Soc. Serv.*, 436

---

amendments to the United States Constitution . . . when they unlawfully deprived her of property.").  Section 1983 does not incorporate rights guaranteed by a state's constitution, so Plaintiff's citation to the Washington Constitution is of no effect.

ORDER GRANTING IN PARTY AND DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS ~ 10

U.S. 658, 694 (1978)).  Personal-capacity suits, on the other hand, "seek to impose individual liability upon a government officer for actions taken under color of law."  *Hafer*, 502 U.S. at 25.  "[T]o establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."  *Graham*, 473 U.S. at 166 (emphasis in original).

Although Defendants assert that Plaintiff is suing Defendants Hill and Faylor in their official capacities, this Court construes the Complaint otherwise. Plaintiff's first cause of action, a section 1983 procedural due process claim, is directed against Defendants Hill and Faylor for their individual conduct "while acting under color of state law."  ECF No. 1-1 at 6, ¶ 3.2.  Although Plaintiff includes each Defendant's respective title—that is, SCPAPS Director and Officer—this does not detract from the fact that Plaintiff seeks to hold them personally liable for deprivation of her property without due process.  Further, nothing in the Complaint alleges that a custom or policy of the County contributed to the alleged violation.  Accordingly, this Court construes Plaintiff's section 1983 claim as a personal-capacity suit against Defendants Hill and Faylor.[5]

---

[5] Although Plaintiff seeks to hold the County liable for the actions of Defendants Hill and Faylor under the doctrine of respondeat superior, ECF No. 1-1 at 6, ¶ 3.8, the Supreme Court's opinion in *Monell* clearly states that "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a

ORDER GRANTING IN PARTY AND DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS ~ 11

2.  <u>Procedural Due Process</u>

Defendants first move for judgment on Plaintiff's procedural due process claim.  As the sole support for dismissal, Defendants assert—based on the assumption Plaintiff is suing Defendants Hill and Faylor in their official capacities—that Plaintiff has failed to allege any policy or custom which gave rise to her claim.  ECF No. 4 at 6-7.

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV.  "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property."  *Carey v. Piphus*, 435 U.S. 247, 259 (1978).  At its minimum, due

municipality cannot be held liable under § 1983 on a respondeat superior theory."  *Monell*, 436 U.S. at 691 (emphasis in original).  Rather, a local government can only be held liable under §1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §1983."  *Id.* at 694.  As Plaintiff is not alleging that it was an "official policy" of Spokane County which served as the moving force of the alleged constitutional injury here, *id.*, this Court does not construe Plaintiff's section 1983 claim as against Spokane County.

ORDER GRANTING IN PARTY AND DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS ~ 12

process requires "some kind of notice and . . . some kind of hearing." *Goss v. Lopez*, 419 U.S. 565, 579 (1975).  "The fundamental requisite of due process of law is the opportunity to be heard . . .[, a right which] has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (internal quotation marks and citation omitted).  That being said, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Elridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

Courts analyze procedural due process in two steps.  First, the court "asks whether there exists a liberty or property interest which has been interfered with by the State." *Vasquez v. Rackauckas*, 734 F.3d 1025, 1042 (9th Cir. 2013) (internal quotation marks and citation omitted).  Second, the court "examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id.* To guide the second step, courts consider the three-part test announced in *Mathews v. Eldridge*:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 334-35.

As the initial step in the due process analysis, as applied to Plaintiff's claim, there can be no doubt that a person's property interest in his or her dog, although "of an imperfect or qualified nature [which] may be subjected to peculiar and drastic police regulations by the state," is a protected property interest for purposes of procedural due process. *Nicchia v. New York*, 254 U.S. 228, 230 (1920). Accordingly, because Plaintiff has a protected right, this Court now analyzes whether, considering the allegations within Plaintiff's Complaint, she has alleged sufficient facts to support the remaining requirements of a due process claim; that is, whether the procedures afforded were constitutionally deficient under the test set forth in *Mathews*.

### a.  Defendant Faylor

Plaintiff first alleges that Defendant Faylor deprived her of procedural due process when he impounded her dog.  Based on the facts alleged here, Plaintiff has failed to state a plausible procedural due process claim.  Although Plaintiff undoubtedly has a strong private interest in maintaining possession of her pet, which generally serve as companions for their owners, s*ee Porter v. DiBlasio*, 93 F.3d 301, 306 (7th Cir. 1996), she has failed to provide any allegations demonstrating the process afforded her by Defendant Faylor was constitutionally deficient.

ORDER GRANTING IN PARTY AND DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS ~ 14

Regarding the procedures used, Defendant Faylor's conduct followed the Spokane County Code.  Officer Faylor, in responding to a report of an injured dog, found the dog to be both off the premises of its owner and "a bit wobbly." Pursuant to Spokane County Code, Defendant Faylor was justified in impounding the injured dog at this time.  *See* Spokane County Code 5.04.060(1), 5.04.070(1). When the circumstances justifying impoundment exist, the officer must notify the owner by mail, telephone, or in person, that the dog has been impounded and where it may be redeemed.  *Id.* at 5.04.060 (2).  Office Faylor attempted to contact Plaintiff, both in person and by telephone, and when that proved ineffective, he provided written notice that the dog was impounded and where it could be redeemed.  The Code clearly states this procedure and the grounds for impoundment, and because Plaintiff is presumed to know the law, she was on notice that her dog could be impounded pursuant to the Code.  Moreover, Plaintiff does not allege any additional or substitute procedural safeguards she was due, let alone their probable value.  Given the County's strong public interest in regulating stray dogs and the impracticability of ensuring that each owner be given a right to respond before his or her dog is first impounded, there is nothing to suggest the procedure afforded was constitutionally deficient.  As the Code avers, the purpose of its provisions is to "secure and maintain such levels of animal control . . . as will protect the general public's health and safety and to the greatest degree practicable

ORDER GRANTING IN PARTY AND DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS ~ 15

1    prevent damage to property." *Id.* at 5.04.010.   Accordingly, even accepting all the

2    facts alleged in the Complaint as true, Plaintiff does not have a plausible

3    procedural due process claim against Defendant Faylor and thus is it dismissed.

4                          *b. Defendant Hill*

5            Plaintiff also alleges that Defendant Hill deprived her of procedural due

6    process when she euthanized Plaintiff's dog without notice.  Unlike Plaintiff's

7    claim against Defendant Faylor, this Court finds Plaintiff has alleged sufficient

8    facts to support a plausible procedural due process claim against Defendant Hill.

9            Under the first *Mathews* prong, as stated above, Plaintiff has a strong private

10   interest in maintaining rights in her pet dog.

11           Under the second prong, although Spokane County Code puts unlicensed

12   dog owners on notice that their impounded dog may risk euthanasia if the

13   circumstances justify it, SCRAPS knew Plaintiff was the dog owner and had been

14   in contact with her the day before the dog was euthanized.  However, instead of

15   first affording Plaintiff a meaningful opportunity to contest the termination of her

16   property rights, SCRAPS went ahead with the procedure without notice.

17   Arguably, the spirit of the ordinance, considering that licensed dogs cannot be

18   euthanized within the holding period, suggests that a dog whose owner is known

19   will not be euthanized before either the owner is put on notice or the five day

20   holding period has passed.  Moreover, Plaintiff suggests additional, minimal

ORDER GRANTING IN PARTY AND DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS ~ 16

procedural safeguards could have easily been implemented, such as awaiting Plaintiff's return call or attempting to contact her again once the decision to euthanize was made.

Finally, under the third prong, this Court finds, even considering the governmental interests at stake, additional procedures may not be unduly burdensome. This Court recognizes the impracticability of holding stray dogs in animal shelters indefinitely, especially in light of fiscal and administrative constraints such a requirement would cause. Nonetheless, it may not be so unduly burdensome and impracticable, given the circumstances alleged here, to have provided Plaintiff "some kind of notice and . . . some kind of hearing," *Goss v. Lopez*, 419 U.S. at 579, in order for Plaintiff to be on notice her animal would be euthanized and provide her the opportunity to "appear or default, acquiesce or contest," *Mullane*, 339 U.S. at 314 (1950). Accordingly, based on the facts alleged, Plaintiff has stated a plausible cause of action for violation of procedural due process, as alleged against Director Hill.

## C. Emotional Distress

### 1. Intentional or Reckless Infliction of Emotional Distress

Defendants move to dismiss Plaintiff's outrage claim, asserting that the alleged conduct of Defendants cannot be deemed to be extreme or outrageous because it was lawful under the County Code. ECF No. 4 at 7-8.

ORDER GRANTING IN PARTY AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS ~ 17

To establish the tort of outrage, a plaintiff must show "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress on the part of the plaintiff." *Reid v. Pierce Cnty.*, 136 Wash.2d 195, 202 (1998).   It is not enough that that the defendant acted with tortious or criminal intent, nor will liability extend "to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Grimsby v. Samson*, 85 Wash.2d 52, 59 (1975).  Rather, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*  As the Washington Supreme Court has phrased it, the conduct must be such that "the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim 'Outrageous!'" *Kloepfel v. Bokor*, 149 Wash.2d 192, 196 (2003) (en banc) (quoting *Reid*, 136 Wash.2d at 201-02).  Although the question of whether a defendant's conduct was sufficiently outrageous is normally left to the jury, "it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently outrageous to result in liability." *Dicomes v. State*, 113 Wash.2d 612, 630 (1989).

      *a. Defendant Faylor*

Plaintiff's intentional infliction of emotional distress claim, as against

ORDER GRANTING IN PARTY AND DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS ~ 18

Defendant Faylor, is supported by the following facts in her Complaint: (1) Defendant Faylor impounded Plaintiff's dog after finding him "at large" and potentially injured; (2) after he was unable to contact Plaintiff, Defendant Faylor left notice that SCRAPS would hold her dog for a period of five days; (3) Plaintiff's dog was euthanized on the third day despite the holding period that was represented on the notice; and (4) Plaintiff suffered insomnia, anxiety, depression, and a general deterioration in physical health as a result.

Focusing on the actions of Defendant Faylor alone, Plaintiff has not alleged any conduct "utterly intolerable in a civilized community," *Grimsby*, 85 Wash.2d at 59, to support a tort of outrage given the high bar set by Washington courts. Rather, as an animal control officer for SCRAPS, Defendant Faylor was merely following his lawful obligations under the County Code. Accordingly, this claim, as against Defendant Faylor is properly dismissed.

### b. Defendant Hill

Plaintiff's intentional infliction of emotional distress claim, as against Defendant Hill, is supported by the following facts in her Complaint: (1) Plaintiff was on notice that her dog would be held for five days; (2) on the third day, Defendant Hill authorized euthanasia in light of the dog's condition; (3) in her communications with SCRAPS beforehand, Plaintiff was not given any information to suggest her dog was in ill health; (4) Plaintiff was informed of the

ORDER GRANTING IN PARTY AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS ~ 19

1   decision to euthanize after it took effect; (5) Plaintiff was not given a meaningful

2   opportunity to contest this decision and retrieve her dog before it was euthanized,

3   even though SCRAPS knew she was the owner and had been in contact with her

4   the day before; and (6) Plaintiff suffered insomnia, anxiety, depression, and a

5   general deterioration in physical health as a result.

6         Considering these facts, this Court similarly finds Plaintiff has failed to

7   allege sufficient facts to survive dismissal.  Although the facts, as alleged, would

8   understandably lead to emotional distress, Defendant Hill's behavior was not "so

9   outrageous in character, and so extreme in degree, as to go beyond all possible

10  bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

11  civilized community."  *Id.*  According to the "Injured Animal Form," the

12  veterinarian opined that euthanasia would be the most humane option given

13  Plaintiff's dog's condition.  Given that the dog had already been in SCRAPS'

14  custody for three days, it was not so extreme and outrageous to conclude the dog

15  would not be redeemed and that euthanasia was the only humane, and necessarily

16  immediate, option given the constraints of a kennel environment.  Although some

17  warning to Plaintiff before the decision took effect was likely warranted, given the

18  facts alleged, such behavior does not give rise to a claim for intentional or reckless

19  infliction of emotional distress.  Accordingly, this claim is also dismissed, as

20

ORDER GRANTING IN PARTY AND DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS ~ 20

1    against Defendant Hill.[6]

2         2.  Negligent Infliction of Emotional Distress

3         Defendant similarly moves to dismiss Plaintiff's negligent infliction of

4    emotional distress claim, asserting that the underlying conduct of Defendants Hill

5    and Faylor was lawful.  ECF No. 4 at 7-8.

6         To prove negligent infliction of emotional distress, a plaintiff must

7    demonstrate that the emotional distress is "(1) within the scope of foreseeable harm

8    of the negligent conduct, (2) a reasonable reaction given the circumstances, and (3)

9    manifest by objective symptomatology."  *Bylsma v. Burger King Corp.*, 176

10   Wash.2d 555, 560 (2013).  "The scope of foreseeable harm of a given type of

11   conduct depends on 'mixed considerations of logic, common sense, justice, policy,

12   and precedent.' "  *Id.* at 171 (quoting *King v. City of Seattle*, 84 Wash.2d 239, 250

13   (1974)).  "As with any claim sounding in negligence, where a plaintiff brings suit

14   based on negligent infliction of emotional distress we test the plaintiff's negligence

15   claim against the established concepts of duty, breach, proximate cause, and

16   damage or injury."  *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wash. 2d 233,

17   243 (2001) (internal quotation marks and citation omitted).

18   ───────────────
     [6] Because the factual allegations regarding the conduct of Defendants Hill and

19   Faylor do not support a claim, Spokane County can similarly not be liable under

20   the theory of respondeat superior.

ORDER GRANTING IN PARTY AND DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS ~ 21

1          *a.  Defendant Faylor*

2          As against Defendant Faylor, Plaintiff's negligent infliction of emotional

3    distress claim is properly dismissed.  Plaintiff's claim is based on the same

4    allegations supporting her outrage claim.  Here, the threshold inquiry is whether

5    Defendant Faylor engaged in negligent conduct when he posted a notice that said

6    SCRAPS would hold Plaintiff's dog for 5 days, even though it was euthanized on

7    the third day.  Considering there are no allegations to suggest Defendant Faylor

8    participated in the decision to euthanize Plaintiff's dog on the third day, Plaintiff

9    necessarily cannot show breach.  Accordingly, this claim is properly dismissed as

10   against Defendant Faylor.

11         *b.  Defendant Hill*

12         As against Defendant Hill, Plaintiff has sufficiently alleged a plausible claim

13   for negligent infliction of emotional distress.  A pet, although characterized as

14   property under the law, serves as a companion and is undoubtedly an "emotionally

15   laden personal interest" of its owner.  *See Bylsma,* 176 Wash.2d at 561.  Thus,

16   when the owner forever loses this companion, without adequate notice, it is well

17   within the scope of foreseeable harmful consequences that the pet owner will

18   reasonably suffer emotional distress.  Moreover, Plaintiff has sufficiently alleged

19   the "objective symptomatology" requirement, asserting that she has suffered

20   insomnia, anxiety, depression, and a general deterioration in physical health as a

ORDER GRANTING IN PARTY AND DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS ~ 22

result of Defendant Hill's conduct.  Accordingly, based on the facts alleged, Plaintiff has stated a plausible for claim for negligent infliction of emotional distress against Defendant Hill, as well as against Spokane County under the theory of respondeat superior.

**D. Conversion**

Defendant moves to dismiss Plaintiff's claim for conversion on the grounds that Defendants' conduct in impounding and euthanizing the dog was lawful.  ECF No. 4 at 8-9.

"The tort of conversion is 'the act of willfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it.'"  *Consulting Overseas Mgmt., Ltd. v. Shtikel*, 105 Wash.App. 80, 83 (2001) (quoting *Wash. St. Bank v. Medalia Healthcare LLC*, 96 Wash.App. 547, 554 (1999)).  "Absent willful misconduct, the measure of damages for conversion is the fair market value of the property at the time and place of conversion." *Potter v. Wash. State Patrol*, 165 Wash.2d 67, 78 (2008) (en banc) (quoting *Merchant v. Peterson*, 38 Wash.App. 855, 858 (1984)).

1. Defendant Faylor

As alleged against Defendant Faylor, this Court finds this claim should be dismissed.  Pursuant to the Spokane County Code, a SCRAPS officer may impound a dog when the dog is found to be sick or injured or is running at large.

ORDER GRANTING IN PARTY AND DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS ~ 23

Spokane County Code 5.04.060(1), 5.04.070(1).  Because the facts, as alleged in Plaintiff's Complaint, demonstrate that Defendant Faylor responded to a report of an injured dog and found the dog to be "a bit wobbly" when he arrived at the scene, his act of impoundment was lawful under the County Code.  Further, considering Plaintiff was not present to secure the dog on a leash and the Complaint suggests the dog was "physically off the premises of [Plaintiff]," Defendant Faylor had further justification to impound the animal under the Code. Accordingly, although Defendant Faylor deprived Plaintiff of possession of her chattel, he had lawful justification for such conduct and this claim is properly dismissed against him.

## 2.  Defendant Hill

As alleged against Defendant Hill, this Court finds Plaintiff has stated a plausible claim for conversion for purposes of surviving dismissal.  Pursuant to Spokane County Code, SCRAPS may euthanize an unlicensed, impounded dog— notwithstanding the 3-day holding period—if it is suffering from serious injury or disease.  Spokane County Code 5.04.060(4).   However, if the dog is licensed— that is, SCRAPS is on notice of the owner—SCRAPS "shall be held for the owner or keeper for at least [five days] from the time of impoundment" and only after this holding period has passed may SCRAPS authorize euthanasia or adoption.  *Id.* at 5.04.060(2)-(3).  Although Plaintiff has not alleged her dog was licensed, she has

ORDER GRANTING IN PARTY AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS ~ 24

1   alleged that SCRAPS knew she was the owner and had been in contact with

2   Plaintiff just the day before.  In the spirit of the ordinance, Plaintiff's dog was, for

3   all intents and purposes, a licensed animal because its owner was known.  Thus,

4   even if the dog were seriously ill, euthanasia would not be authorized under the

5   ordinance before the five-day holding period came to a close.  Accordingly, based

6   on the facts alleged Plaintiff has stated a plausible claim for conversion against

7   Defendant Hill, as well as against Spokane County under the theory of respondeat

8   superior.

9       **E. Negligent Misrepresentation**

10      Finally, Defendant moves to dismiss Plaintiff's negligent misrepresentation

11   claim against Defendant Faylor on the grounds that the notice given to Plaintiff

12   was subject to change under the ordinance in the event the dog was suffering from

13   serious injury and needed to be euthanized.  ECF No. 4 at 9.

14      In assessing claims for negligent misrepresentation, Washington courts

15   generally rely on the definition as set forth in the Restatement Second of Torts

16   § 522.  *Donatelli v. D.R. Strong Consulting Eng'rs, Inc.*, 179 Wash.2d 84, 95

17   (2013) (en banc); *Lawyers v. Title Ins. Corp. v. Baik*, 147 Wash.2d 536, 545 (2002)

18   (citing *ESCA Corp v. KPMG Peat Marwick*, 135 Wash.2d 820, 826 (1998)).  To

19   prove a claim for negligent misrepresentation, a plaintiff must prove "by clear,

20   cogent, and convincing evidence," that (1) the defendant, in the course of his

business, profession, or employment, supplies false information for the guidance of

others in their business transactions, (2) the defendant knew or should have known

that information was supplied to guide plaintiff in his or her business transaction,

(3) the defendant was negligent in obtaining or communicating the false

information, (4) the plaintiff reasonably relied on the information, and (5) the false

information proximately caused the plaintiff damages. *Ross v. Kirner*, 162

Wash.2d 493, 499-500 (2007) (citing *Baik*, 147 Wash.2d at 545).  Negligent

misrepresentation invokes the duty to disclose only in terms of a business

transaction and is further limited to situations in which business advice is given by

someone who has a financial stake in the matter. *Richland Sch. Dist. v. Mabton*

*Sch. Dist.*, 111 Wash.App. 377, 386-87 (2002) (declining to adopt a theory of

negligent misrepresentation under Restatement Second of Torts § 311 which

imposes liability on anyone who gives false information, information upon which

another reasonably relies, and physical harm results); *see also Isakson v. WSI*

*Corp.*, 771 F.Supp.2d 1257, 1264 (W.D. Wash. 2011) (noting that Washington has

not adopted the theory of negligent representation involving risk of physical harm).

Plaintiff fails to state a claim under Washington's negligent

misrepresentation law.  Because the alleged misrepresentation occurred outside a

business transaction and Defendant Faylor otherwise lacked a pecuniary interest,

Plaintiff's claim for negligent misrepresentation is appropriately dismissed.

ORDER GRANTING IN PARTY AND DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS ~ 26

### F. Leave to Amend

Even when a complaint fails to state a claim for relief, "[d]ismissal without leave to amend is improper unless it is clear that the complaint could not be saved by an amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009). The standard for granting leave to amend is generous. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). The court considers five factors in assessing the propriety of leave to amend—bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

This Court finds amendment is proper. First, the Court finds no indication of bad faith or undue delay. Second, this Court finds no prejudice to the opposing party at this early stage in the proceedings. Third, Plaintiff has not previously amended her Complaint. Finally, this Court finds amendment would not be futile. Futility is established only if the Complaint "could not be saved by any amendment." *Id.* (internal citations omitted). At this early stage of the proceedings, the Court can conceive of additional facts that could provide plausible support for Plaintiff's claims otherwise dismissed by this Order. *See id.* Consequently, because the factors weigh in favor of amendment, leave to amend Plaintiff's Complaint is granted.

ORDER GRANTING IN PARTY AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS ~ 27

**IT IS HEREBY ORDERED:**

1.  Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. [P.] 12(c) (ECF No. 4) is **GRANTED in part** and **DENIED in part**.  All claims against Defendants Spokane County Regional Animal Protection Service (SCRAPS) and Office Faylor are dismissed.  Plaintiff's intentional infliction of emotional distress and negligent misrepresentation claims are dismissed.  As indicated herein, Defendant's Motion as to all other claims is **DENIED**.

**2.** Plaintiff is **GRANTED** leave to file an amended complaint within **thirty (30) days** of the entry of this order.

3.  Pursuant to Federal Rule of Civil Procedure 81(c), this Court orders that any demand for a jury trial be filed within **thirty (30) days** of the entry of this order.

The District Court Executive is hereby directed to enter this Order, provide copies to counsel, and **TERMINATE** Defendant Officer Faylor and Spokane County Regional Animal Protection Service (SCRAPS) from the caption at this time.

**DATED** March 27, 2015.



THOMAS O. RICE
United States District Judge

ORDER GRANTING IN PARTY AND DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS ~ 28